EDMUND WILSON, attorney-general,

*v.*

EAST JERSEY WATER COMPANY.

[Decided May 1st, 1914.]

1. The legislature has, by necessary implication from its various acts giving to municipalities a right to obtain a water-supply, granted to them the state's right in so much water to be taken from the streams of the state as they may need for their lawful purposes.

2. Municipalities having the right by implied grant from the state to appropriate water from streams for their lawful uses and purposes can, under the express provisions of act 1888 (*2 Gen. Stat. 1895 p. 2210 § 405*), contract with water companies to supply such water, and thus make them their agents or instrumentalities for that purpose.

3. Under act 1888 (*2 Gen. Stat. 1895 p. 2210 § 405*), authorizing municipalities to contract with water companies to supply them with water, a water company with whom a municipality has so contracted may contract with other companies for the use of their pipes and pumping systems.

-----

*Mr. Edmund Wilson, pro se.*

*Mr. Gilbert Collins,* for the defendant.

STEVENS, V. C.

The questions now to be considered were reserved on the former hearing because of the absence of the municipalities principally affected. These municipalities have been brought in and the case is ready for final determination. The questions reserved were stated in the opinion (*Wilson, Attorney-General,* v. *East Jersey Water Co., 78 N. J. Eq. 330*) as follows:

(1) Has the legislature, by necessary implication from its various acts giving to municipalities a right to obtain a water-supply, granted to them the state's right in so much water to be taken from the streams of the state as they may need for their lawful purposes?

(2) If such consent has been given, does the East Jersey Water Company stand in the position of acting as the lawful agents of the defendant municipalities in obtaining the supply? This second question has been somewhat modified by what has occurred during the progress of the suit.

As to the first question, there can be no doubt. The authorities, cited in my former opinion, lead inevitably to the conclusion that when the legislature has authorized a municipality to procure a water-supply, it has, by necessary implication, granted the state's right in so much of the water of the stream, from which the supply is to be taken, as the municipality may need. There never has been a direct grant of such right to any municipality and if the grant be not implied, every municipality is now appropriating the state's right in the water unlawfully. The uniform course of decision is in favor of the implication.

The next question is whether the East Jersey Water Company and those other corporations which are now engaged in bringing the waters of the Passaic to the defendant municipalities are the lawful agents or instrumentalities of the municipalities for that purpose.

The act of 1888 (*Gen. Stat. p. 2210*) cited at length in my former opinion, authorizes the appropriate municipal authority

"to make and enter into a contract or agreement with any water company or other company, contractor or contractors for one year or a term of years for the obtaining or furnishing of a supply or a further or other supply of water," &c.

This the defendant municipalities have done. Having done so, they may lawfully take, as against the state, water for "their lawful uses and purposes." The attorney-general contends, however, that the act is to be construed strictly and that the company having the contract is without authority, as he expresses it, "to farm out its duty or delegate its agency." But that this so-called delegation is not unlawful, has been very recently decided by the supreme court in cases in which some of the very contracts here attacked were the subject of investigation. *Paterson* v. *Kearny, 84 N. J. Law 456; Paterson* v. *Jersey City, 84 N. J. Law 454.*

The East Jersey Water Company was the original owner of the plant and water works at Little Falls, the point of diversion. Afterwards, by conveyance, undivided interests therein were vested in the Montclair Water Company, the Passaic Water Company and the Acquackanonk Water Company, which became with the East Jersey Water Company tenants in common thereof. These owners by agreement made December 31st, 1910, gave to the executive officers of the Montclair Water Company

"the charge and management of the joint property and of the pipe lines connected therewith, so far as owned in common, for the purpose of operating the same and delivering the water for each of them into the pipe lines used exclusively by the said parties respectively, to the extent of their several requirements."

The township of Kearny entered into a contract with the East Jersey Water Company in 1895. In 1903 this contract was assigned to the New Jersey Suburban Water Company and the New York and New Jersey Water Company. In 1904 Kearny ratified the assignment and is now receiving its water thereunder. On May 18th, 1911, the East Jersey Water Company entered into a supplemental agreement with the New Jersey suburban company and the New York and New Jersey company by the terms of which the Passaic river at Little Falls was designated as the source of supply and the East Jersey Water Company was constituted the agent and employe of the New Jersey suburban company and the New York and New Jersey company

"to use its water power, mains and riparian and other facilities to accomplish the diversion which is authorized by said municipal contracts and to receive per million gallons, for the water so delivered through its mains, into the mains of the parties of the second part, the prices prescribed in its contracts as compensation, *not* for water sold, but for services as agent and for the use of its appliances, water power, mains and property in accomplishing the municipal supply which the party of the first part hereby agrees to use and provide for that purpose."

The situation then, as far as respects Kearny, is as follows: Kearny has, in effect, a contract for a supply of pure and wholesome water with the New Jersey suburban company and the New York and New Jersey company, made pursuant to the

provisions of the act of 1888. It has its own distributing system of pipes and mains. These connect with the pipes and mains of the two companies. The two companies have employed the East Jersey company, as their agent, to deliver into their pipes and mains, water to be taken from the Passaic at Little Falls. The East Jersey company, in its turn, with the other companies above named, has employed the officers of the Montclair Water Company to act as its agent in the work of pumping the water from the river and delivering it through the East Jersey company's mains to the mains of the New Jersey suburban company and the New York and New Jersey company. On this somewhat complicated situation, brought about by the fact that the whole line, extending from Little Falls to Kearny, is made up of sections owned by the different companies, Mr. Justice Swayze, in the case above cited, remarked as follows (*84 N. J. Law 458*): "Since the point of diversion at Little Falls is distant from the town (of Kearny) there must be some means of conveying the water to the distributing system of the town. We see no reason why the town may not avail itself of the most convenient method. It might, after it had acquired the right to divert, pump or otherwise convey the water in barrels or tank cars, as is sometimes done with oil and so transport it, but surely it is under no obligation to adopt that expensive method, when a pipe line is available. *In effect,* as counsel argues, *the diversion is a diversion by the municipality. No actual diversion can take place except as the municipality uses the water.* * * * If the municipality has a distributing system so that the water and water rights which it acquires can be made available for the benefit of its citizens, it can make no difference whether it owns its own reservoirs or not. It must be enough that it owns its distributing system. To force municipalities which are as close together as they are in the Passaic valley to have each its own pumping station, its own reservoir and its own pipe line from Little Falls to the municipal boundary, would be to compel a useless waste of money. Harrison, Kearny and East Newark, for example, are one compact city. We find nothing that would forbid them to have a common pipe line and a common reservoir. If they may do this, *the means by which they may accomplish the*

*end is not material even though that means is the selection of a water company as their common agent."*

The contracts attacked in this suit were the basis of Paterson's attack and the court found nothing illegal in them. They could not be, as contracts, legal as against Paterson and illegal as against the state. The attorney-general argues that the New York and New Jersey company and the New Jersey suburban company could not delegate to other companies the duty of bringing water to Kearny. They do not attempt to do so. That they may perform their own contractual obligation, not having pipes extending the whole distance and a pumping system of their own, they contract for the use of the pipes and pumping system of the East Jersey company. By the supplemental agreement of May 18th, 1911, heretofore referred to, made since my former decision, and no doubt in consequence of it, the East Jersey company renounces, in express terms, all claim to sell water. It agrees to act as the agent of the two companies and to permit them to use its mains and appliances. It asks compensation for this and this only. It no longer asserts or pretends that it is "the owner of various sources of water-supply." As Mr. Justice Swayze points out, it is really the municipality which is taking and using the water. It is taking it by means of the instrumentalities provided under and pursuant to its contract with the New York and New Jersey and the New Jersey suburban companies.

As the question of the legality of the arrangement made by the municipality with the two companies and by them with the East Jersey company is a purely legal one, and as the supreme court has passed upon it, it is not open to question here.

It is unnecessary to consider the case of the other municipalities separately. As far as the contracts, under which they obtain water are challenged, they stand on substantially the same ground.